UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

BRITTANY KILCHER,

                                   Plaintiff,

                                                              1:19-CV-00157
                    v.                                        (MAD/TWD)

NEW YORK STATE POLICE,

                                   Defendant.
_____

APPEARANCES:

BRITTANY KILCHER
Plaintiff pro se
1618 Columbia Turnpike
Castleton-on-Hudson, New York 12033


**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

### ORDER AND REPORT-RECOMMENDATION

The Clerk has sent the *pro se* civil rights complaint of Plaintiff Brittany Kilcher, brought

pursuant to 42 U.S.C. § 1983, for initial review.  (Dkt. No. 1.)  Plaintiff has alleged § 1983

claims against Defendant New York State Police for violation of her rights under the First,

Fourth, and Fifth Amendments, as well as a state court negligence claim.  *Id*.  Also before the

Court is Plaintiff's application to proceed *in forma pauperis* ("IFP application").  (Dkt. No. 2.)

I.    **IFP APPLICATION**

A court may grant *in forma pauperis* status if a party "is unable to pay" the standard fee

for commencing an action.  28 U.S.C. § 1915(a)(1).  After reviewing Plaintiff's IFP application,

the Court finds that she meets this standard.  Therefore, Plaintiff's IFP application (Dkt. No. 2) is

granted.

## II.    LEGAL STANDARDS FOR INITIAL REVIEW

Even when a plaintiff meets the financial criteria for *in forma pauperis*, 28 U.S.C.

§ 1915(e) directs that when a plaintiff proceeds *in forma pauperis*, "the court shall dismiss the

case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii)

fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a

defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must look to see whether the

complaint lacks an arguable basis either in law or in fact.  *Neitzke v. Williams*, 490 U.S. 319, 325

(1989).  "An action is frivolous when either: (1) the factual contentions are clearly baseless such

as when the claims are the product of delusion or fantasy; or (2) the claim is based on an

indisputably meritless legal theory."  *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437

(2d Cir. 1998) (citations and internal quotation marks omitted).  Although extreme caution

should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse

party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin*,

700 F.2d 37, 41 (2d Cir. 1983), the court still has a responsibility to determine that a claim is not

frivolous before permitting a plaintiff to proceed.  *See, e.g., Thomas v. Scully*, 943 F.2d 259, 260

(2d Cir. 1991) (per curiam) (holding that a district court has the power to dismiss a complaint *sua

sponte* if the complaint is frivolous).

To survive dismissal for failure to state a claim, a complaint must plead enough facts to

state a claim that is "plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-harmed-me accusation." *Id*. In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

Where a plaintiff proceeds *pro se*, the pleadings must be read liberally and construed to raise the strongest arguments they suggest. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (citation omitted). A *pro se* complaint should not be dismissed "without giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## III.    COMPLAINT

Plaintiff alleges that on July 15, 2018, a vehicle in which she and her friends were riding

was struck from the rear by another vehicle.  (Dkt. No. 1 at 2.[1])  Plaintiff further alleges that a

trooper came to the car in which Plaintiff was a passenger, yelled profanities, and told the driver

to get out of the car.  *Id*.  Plaintiff began recording the incident, and the trooper told her to put her

phone down.  *Id*.  The trooper then allegedly assaulted Plaintiff and placed her in handcuffs.  *Id*.

According to Plaintiff, the Defendant New York State Police has failed to arrest the trooper or

otherwise hold her accountable since the time of the incident.  *Id*.

Plaintiff alleges that the trooper used excessive force and unlawfully imprisoned Plaintiff

in violation of her Fourth Amendment rights, causing Plaintiff to miss work, sustain excessive

bruising, and suffer from post-traumatic stress, hyperventilation, and defamation of character.  *Id*.

at 3.  Plaintiff further alleges that her Fifth Amendment right to due process of law was violated

when she was aggressively yanked out of the car for exercising her right to record the incident

and subsequently placed in handcuffs.  *Id*.  Plaintiff also alleges that as a victim in a car accident,

the trooper addressed her with profanities and told her to put her phone down and assaulted her

when she began to record the incident in violation of her First Amendment rights.  *Id*.  Plaintiff

has also asserted a state law negligence claim based upon the trooper laughing at her when

Plaintiff asked for medical attention.  *Id*.  Plaintiff seeks monetary damages and the arrest of the

trooper.  *Id*. at 4.

**IV.    ANALYSIS**

The sole named Defendant in this action is the New York State Police.  (Dkt. No. 1.)

Plaintiff's claims against the New York State Police are barred by both the Eleventh Amendment

---

[1]  Page references to documents identified by docket number are to the numbers assigned
by the CM/ECF docketing system maintained by the Clerk's Office.

4

and the language of § 1983.[2]  *See Pierce v. New York State Police (Troop D Lowville)*, No. 7:05-CV-1477 (GHL), 2011 WL 1315485, at *13 (N.D.N.Y. April 4, 2011)[3] (citing *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989)).

The Eleventh Amendment jurisdictionally bars from federal court all suits by private parties against a state or one of its agencies unless the state consents to such suit or Congress has expressly abrogated the state's immunity.  *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100-02 (1984).  It is well-settled that Congress did not abrogate states' immunity when it enacted § 1983.  *See, e.g., Quern v. Jordan*, 440 U.S. 332, 343-45 (1979).  The Eleventh Amendment bar has been found to apply to the New York State Police as an agency of the State of New York.  *See, e.g., Riley v. Cuomo,* No. 2:17-cv-01631 (ADS) (AYS), 2018 WL 1832929, at *4 (E.D.N.Y. April 16, 2018) (New York State Police as a division in the executive department of New York State is immune from claims under § 1983); *Finkelman v. New York State Police*, No. 06 Civ. 8705(JSR), 2007 WL 4145456, at *3 (S.D.N.Y. Nov. 15, 2007) (Eleventh Amendment barred plaintiff's suit against New York State Police seeking monetary damages under § 1983);  *Estes-El v. Town of Indian Lake*, 954 F. Supp. 527, 536 (N.D.N.Y. 1997) (same).  Moreover, the New York State Police is not a person subject to suit under § 1983. *See Lilly v. Cullen*, No. 15-CV-874A(F), 2017 WL 1273972, at *3 (W.D.N.Y. March 14, 2017) (citing *Will*, 491 U.S. at 65).

---

[2]  The Eleventh Amendment also bars Plaintiff's state law negligence claim against the New York State Police.  *See Pennhurst*, 465 U.S. at 120; *Winokur v. Office of Court Admin*., 190 F. Supp. 2d 444, 450-51 (E.D.N.Y. 2002).

[3]  Copies of all unpublished decisions cited herein will be provided to Plaintiff in accordance with *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

In light of the foregoing, the Court recommends that Plaintiff be granted thirty days from the date the District Court files its order on this Court's Report-Recommendation within which to file an amended complaint, for initial review by this Court, naming a proper defendant or defendants not subject to the Eleventh Amendment bar as defendant(s) in this action.[4]  The Court further recommends that upon the expiration of the thirty days granted Plaintiff to file an amended complaint, the action be dismissed against Defendant New York State Police for lack of subject matter jurisdiction under 28 U.S.C. § 1915(e)(B)(iii) and Rule 12(h)(3) of the Federal Rules of Civil Procedure, whether or not Plaintiff has filed an amended complaint.

**ACCORDINGLY**, it is hereby

**ORDERED** that Plaintiff's IFP application (Dkt. No. 2) is **GRANTED**; and it is hereby

**RECOMMENDED** that Plaintiff be granted thirty days from the date the District Court files its order on this Court's Report-Recommendation within which to file an amended complaint, for initial review by this Court, naming a proper defendant or defendants not subject to the Eleventh Amendment bar as defendant(s) in this action; and it is further

**RECOMMENDED** that upon the expiration of the thirty days granted Plaintiff to file an amended complaint, the original complaint (Dkt. No. 1) be dismissed against Defendant New York State Police under 28 U.S.C. § 1915(e)(B)(iii) and Rule 12(h)(3) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction, whether or not Plaintiff has filed an amended complaint; and it is hereby

---

[4]  A § 1983 claim for monetary damages properly brought against a state trooper in his or her individual capacity is not barred by the Eleventh Amendment.  *See Estes-El*, 954 F. Supp. at 537.  Individual capacity suits seek to impose individual liability upon a government officer who has caused the deprivation of a federal right while acting under color of state law.  *Hafer v. Melo*, 502 U.S. 21, 25 (1991).

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of all unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[5]  Such objections shall be filed with the Clerk of the Court.  **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated:   February 19, 2019
       Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

---

[5]  If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. 6(a)(1)(C).

2007 WL 4145456
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Lawrence L. FINKELMAN, Plaintiff,

v.

NEW YORK STATE POLICE, Unknown
Governmental Entities-John Doe's-
Jane Doe's 1-100, Defendants.

No. 06 Civ. 8705(JSR).
|
Nov. 15, 2007.

*ORDER*

JED S. RAKOFF, District Judge.

**\*1** On August 20, 2007, the Honorable Kevin Nathaniel Fox, United States Magistrate Judge, issued a Report and Recommendation in the above-captioned matter recommending that plaintiff's claims against defendant New York State Police be dismissed but that in all other respects the defendant's motion to dismiss the complaint be denied. Subsequently, on September 17, 2007, defendant New York State Police submitted objections to certain portions of the Report and Recommendation. Accordingly, the Court has reviewed the motion and the underlying record *de novo.*

Having done so, the Court finds itself in complete agreement with Magistrate Judge Fox's Report and Recommendation and hereby adopts its reasoning by reference. Accordingly, the Court dismisses the claims against the New York State Police, with prejudice, but denies the motion to dismiss in all other respects. The Clerk of the Court is directed to close document number 4 in the Court's docket.

There is, however, an issue as to the remaining defendants that was only raised now before this Court and that needs to be addressed by the Magistrate Judge in the first instance, viz., whether the remaining defendants have been actually served and, if not, whether belated service at this point would be untimely and prejudicial. Accordingly, the Court remands the case to Magistrate Judge Fox

to issue a Report and Recommendation on the issue of whether defendants "Unknown Governmental Entities-John Doe's-Jane Doe's 1-100" have been served in this action and whether, if they have not been, the claims against those defendants should be dismissed pursuant to Federal Rule of Civil Procedure 4(m) or otherwise, and with or without prejudice.

SO ORDERED.

## REPORT & RECOMMENDATION

KEVIN NATHANIEL FOX, United States Magistrate Judge.

TO THE HONORABLE JED S. RAKOFF, UNITED STATES DISTRICT JUDGE

### I. INTRODUCTION

Plaintiff Lawrence L. Finkelman ("Finkelman"), proceeding *pro se,* commenced this action pursuant to 42 U.S.C. §§ 1983, 1985, and 1986, against New York State Police and "Unknown Government Entities-John Doe's-Jane Doe's 1-100" ("defendants"). He contends the defendants conspired to violate his civil rights when, in 2001, without a warrant or probable cause, they forced him from his vehicle by threatening him with physical harm, arrest, and criminal charges, and locked him in their patrol car, thus violating both New York and federal penal laws. Finkelman alleges the conspiracy continued when the defendants twice filed false documents in New York State courts in the years that followed.

Before the Court is the defendants' motion, made pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, to dismiss the claim against defendant New York State Police because the Eleventh Amendment bars suit against a state and its agencies. The defendants also contend Finkelman's claims are barred by a three-year statute of limitations and, as such, permitting him to amend the complaint would be futile. [1] Finkelman opposes the defendants' motion to dismiss and their contention that the applicable statute of limitations has expired.

### II. BACKGROUND

**\*2** Finkelman maintains that some time prior to November 28, 2001, the defendants, acting under the color of law, conspired to kidnap and arrest him unlawfully in violation of the Fourth, Fifth, Eighth and Fourteenth Amendments. He contends the defendants' actions constitute violations of federal and state criminal statutes: 18 § U .S.C. 1201 and New York Penal Law § 135.20. According to Finkelman, on November 28, 2001, the defendants lay in wait for him on Interstate Highway 87 and ordered him out of his car. Finkelman alleges the defendants acted without a warrant or probable cause to believe he had committed an offense. Finkelman recalls the defendants threatened to use deadly force and to arrest and charge him for acts he never committed. Finkelman also alleges that "[t]he defendants[,] upon learning that the plaintiff had the evidence from the [ ] grand larceny in his possession [,] locked the plaintiff up in the back [of] their patrol vehicle," and continued to threaten him while he was in their custody. Finkelman maintains the defendants destroyed the evidence he possessed and asked him if he was going to accuse them of grand larceny.

Finkelman alleges that, on November 3, 2004, "[d]efendants knowingly filed a fraudulent and perjurious complaint against the plaintiff" to further the goals of their conspiracy and to prosecute a "malicious, fraudulent and perjurious lawsuit." According to the plaintiff, the defendants engaged in similar misconduct on October 31, 2005, December 28, 2005, and twice on December 29, 2005, when they filed documents related to him, which they knew to be false and perjurious.

Finkelman alleges the defendants "knowingly failed to disclose to the plaintiff, and actively took steps to conceal material information and criminal acts known only to the Defendants regarding the herein criminal violation of the Constitution and laws of the United States and New York," in order to "prevent the plaintiff from filing criminal complaints and making public the criminal acts [enumerated in the instant complaint] and corruption."

Finkelman contends the defendants violated his Sixth and Seventh Amendment rights by using their official positions to deny him the right to a speedy trial, a jury trial, and "compulsory process for obtaining witnesses." Finkelman also contends that the defendants had the opportunity and authority to stop the civil rights violations he alleges were perpetrated, but they declined to do so. According to Finkelman, all the defendants' acts

were committed to shield them from prosecution and to intimidate him because the defendants knew he was "a plaintiff and witness in a felony criminal matter against them. [Therefore, [t]he [d]efendants [ ] threatened and intimidated [him] to deter him from attending, testifying and initiating a criminal complaint and/or suit in a State Court of the United States and to interfere with judicial proceedings."

On October 26, 2006, Finkelman commenced the instant action. Thereafter, on November 2, 2006, he amended his complaint by removing, as defendants to the action: "State of New York;" "John Doe 1-20;" and "Jane Doe 1-20" and replacing them with the following defendants: "New York State Police" "Unknown Government Entities-John Doe's-Jane Doe's 1-100." Finkelman has also included, in his amended complaint, a request that the court direct the defendants to disclose to him documents which will enable him to learn the names of the individual defendants and, thereafter, serve them with process. Finkelman has asked, *inter alia,* that the court grant him injunctive relief and direct the defendants to avoid contacting any potential witnesses unless he is present.

### III. DISCUSSION

**\*3** A court may dismiss an action pursuant to Fed.R.Civ.P. 12(b) (1), for lack of subject matter jurisdiction, only if "it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief." *Raila v. United States,* 355 F.3d 118, 119 (2d Cir.2004). In considering a motion made pursuant to Fed.R.Civ.P. (12)(b)(1), "[a] court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Id.* Further, "[o]n a motion invoking sovereign immunity to dismiss for lack of subject matter jurisdiction, the plaintiff bears the burden of proving by a preponderance of evidence that jurisdiction exists." *Chayoon v. Chao,* 355 F.3d 141, 143 (2d Cir.2004) (quoting *Garcia v. Akwesasne Hous. Auth.,* 268 F.3d 76, 84 (2d Cir.2001).

"In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court ... may refer to evidence outside the pleadings." *See Makarova v. United States* 201 F.3d 110, 113 (2d Cir.2000). Additionally, where, as here, the plaintiff is appearing *pro se,* his or her pleadings "are [to be] held 'to less stringent

standards than formal pleadings drafted by lawyers,' " *Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 176 (1980) (quoting *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595 [1972] ), and should be interpreted "to raise the strongest arguments that they suggest." *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999) (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 [2d Cir.1994] ). This liberal pleading standard is particularly applicable where a *pro se* plaintiff alleges a violation of his or her civil rights. *See Jacobs v. Ramirez,* 400 F.3d 105, 106 (2d Cir.2005).

In their motion to dismiss, the defendants contend that the Eleventh Amendment bars suit against the state of New York and its agencies and, as a result, defendant New York State Police is immune from suit. Finkelman responds that states "must first be in compliance with the Constitution and the laws of the United States" before the Eleventh Amendment is to be applied.

Under the Eleventh Amendment, a state or an arm of a state may not be sued in a federal court absent the state's consent. *See Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 144, 113 S.Ct. 684, 687-88 (1993) (citations omitted). Defendant New York State Police is an arm of the state, and therefore an action brought against it is a suit against the state. *See, e.g., Morrongiello v. Ashcroft,* No. 01 Civ. 2524, 2004 WL 112944, at *2 (S.D.N.Y. Jan. 22, 2004). Sections 1983 and 1985 of Title 42 were not intended to abrogate the states' immunity. *See Degrafinreid v. Ricks,* No. 03 Civ. 6645, 2004 WL 2793168, at *5 (S .D.N.Y. Dec. 6, 2004). The state of New York has not consented to suit in federal court under: (a) 42 U.S.C. § 1983, *see Le Grand v. Evan,* 702 F.2d 415, 417 (2d Cir.1983); (b) 42 U.S.C. § 1985, *see Quirk v. City of New York,* No. 03 Civ. 0324, 2003 WL 1872714, at *1 (S.D.N.Y. Apr. 10, 2003); or (c) 42 U.S.C. § 1986, *see Gasparik v. Stony Brook University,* No. CV-05-3817, 2007 WL 2026612, at *4 (E.D.N.Y. July 9, 2007).

**\*4** Accordingly, Finkelman's claims against defendant New York State Police should be dismissed. However, the complaint contains claims against "John Does and Jane Does 1-100," which the defendants have not addressed. Therefore, dismissal of the entire complaint is not warranted at this time.

### IV. RECOMMENDATION

For the reasons set forth above, the defendants' motion to dismiss the complaint should be denied. The claims against defendant New York State Police should be dismissed.

### V. FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have ten (10) days from service of the Report to file written objections. *See also* Fed.R.Civ.P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Jed S. Rakoff, United States District Judge, 500 Pearl St., Room 1340, New York, New York 10007, and to the chambers of the undersigned, 40 Centre St., Room 540, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Rakoff. FAILURE TO FILE OBJECTIONS WITHIN TEN (10) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See Thomas v. Arn,* 474 U.S. 140 (1985); *IUE AFL-CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.1992); *Wesolek v. Candair Ltd.,* 838 F .2d 55, 57-59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237-38 (2d Cir.1983).

### All Citations

Not Reported in F.Supp.2d, 2007 WL 4145456

### Footnotes

1    The defendants have failed to make a proper motion addressing their statute of limitations defense. Therefore, the Court has determined not to analyze that defense in this writing.

**End of Document**                © 2019 Thomson Reuters. No claim to original U.S. Government Works.

Lilly v. Cullen, Not Reported in Fed. Supp. (2017)

2017 WL 1273972

2017 WL 1273972
Only the Westlaw citation is currently available.
United States District Court, W.D. New York.

Edward M. LILLY, Plaintiff,
v.
Danny J. CULLEN, Benjamin J. Campbell,
New York State Police, Defendants.

15-CV-874A(F)
|
Signed 03/14/2017

**Attorneys and Law Firms**

JAMES OSTROWSKI, ESQ., 63 Newport Avenue, Buffalo, New York 14216, Attorney for Plaintiff.

ERIC T. SCHNEIDERMAN, New York State Attorney General, GEORGE M. ZIMMERMANN, Assistant Attorney General, of Counsel, 350 Main Street, Suite 300A, Buffalo, New York 14202, Attorney for Defendants.

**REPORT and RECOMMENDATION**

LESLIE G. FOSCHIO, UNITED STATES MAGISTRATE JUDGE

**JURISDICTION**

**\*1** This case was referred to the undersigned for all pretrial matters by order of Hon. Richard J. Arcara filed December 8, 2015 (Dkt. 3). It is presently before the court on Defendants' motion to dismiss filed December 4, 2015 (Dkt. 2) and Plaintiff's motion for Moratorium of Proceedings filed February 2, 2016 (Dkt. 8).

**BACKGROUND**

Plaintiff ("Lilly" or "Plaintiff") commenced this action by Complaint filed October 2, 2015 alleging under 42 U.S.C. § 1983 violations of Plaintiff's First and Fourth Amendment rights and similar rights protected by the New York State Constitution, a claim pursuant to 42 U.S.C. § 1985, and a New York State law claim for intentional infliction of emotional distress. Defendants

Campbell and New York State Police, in lieu of an answer, moved to dismiss, pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a claim only as to Defendant Campbell and New York State Police and for lack of subject matter jurisdiction as to Defendant New York State Police pursuant to Fed.R.Civ.P. 12(h) on December 4, 2015 together with Memorandum of Law In Support of Defendants' Partial Motion To Dismiss (Dkt. 2-1) ("Defendants' motion"). Plaintiff's Memorandum Of Law In Response To Motion To Dismiss was filed March 25, 2016 (Dkt. 14) ("Plaintiff's Memorandum"); Defendants' Reply Memorandum Of Law In Further Support Of The Defendants' Partial Motion To Dismiss was filed April 6, 2016 (Dkt. 15) ("Defendants' Reply").

Plaintiff's motion was filed January 19, 2016 (Dkt. 8) ("Plaintiff's motion"); [1] Defendants' Memorandum of Law In Response To Plaintiff's "Motion for Moratorium on [sic] Proceedings" was filed February 3, 2016 (Dkt. 10) ("Defendants' Response to Plaintiff's motion"). Oral argument was deemed unnecessary.

**FACTS** [2]

This action is based on a traffic stop on October 3, 2012 of Lilly by Defendant Danny J. Cullen, then acting as a New York State Trooper ("Cullen"), allegedly after tailgating Lilly. The exact location of this encounter is not specified in the Complaint but other allegations indicate it occurred in the Town of Lewiston, Niagara County, near Plaintiff's residence within this district. According to Plaintiff, while acting in a "nasty and aggressive" manner, Cullen requested Lilly to produce his driver's license and registration, and Lilly complied with Cullen's request. Because Plaintiff believed he had committed no offenses and that Plaintiff "expected Defendant Campbell, another State Trooper whom Lilly had sued in this court on a Fourth Amendment claim, may arrive, fabricate charges and arrest" Plaintiff, Plaintiff telephoned 911 and his wife for assistance. Upon Lilly's wife's arrival at the scene, Cullen informed her he was issuing Lilly an equipment violation summons. After issuing the ticket, Cullen did not immediately return Lilly's driver's license and registration, which Lilly also reported to 911. Arriving on the scene in an apparent response to Lilly's 911 calls, another New York State Trooper, Ryan Burns, with Defendant Cullen, ordered Lilly out of his car, which request Lilly initially refused. After the two officers conferred, Cullen then

Lilly v. Cullen, Not Reported in Fed. Supp. (2017)

Case 1:19-cv-00157-MAD-TWD    Document 5    Filed 02/19/19    Page 12 of 32

2017 WL 1273972

left the scene and Burns returned Lilly's registration and searched Lilly's car without any results. The equipment violation ticket issued to Lilly was later dismissed in town court at the request of the town prosecutor; Lilly's driver's license taken from him by Cullen was, despite Plaintiff's requests to other local state police officers for assistance, was not returned forcing Plaintiff to apply for a duplicate.

## DISCUSSION

**\*2**  In response to Defendants' motion, Plaintiff concedes to dismissal of Plaintiff's Second Claim alleging a First Amendment and § 1985 claim against all Defendants, Plaintiff's Third Claim alleging First Amendment violations against all Defendants, and Plaintiff's Fifth Claim under state law for intentional infliction of mental distress. *See* Plaintiff's Memorandum at 2. Plaintiff does not concede to dismissal of Plaintiff's First Claim against all Defendants alleging a violation of Plaintiff's First Amendment rights, Plaintiff's Fourth Claim for violation of Plaintiff's Fourth Amendment rights nor Plaintiff's Sixth Claim alleging liability against Defendant New York State Police based on *respondeat superior*, however, Plaintiff does concede to dismissal of this claim insofar as it alleges money damages against this Defendant. *See* Plaintiff's Memorandum at 2. Although not specifically addressed by Plaintiff, the court presumes Plaintiff's concessions also apply to Plaintiff's claims under analogous provisions of the New York State Constitution which are not specifically denominated by the Complaint. Specifically, Plaintiff contends that as a *pro se* complainant, the Complaint fairly alleges a request for equitable, *i.e.*, injunctive relief against the State Police to prevent future violations of Plaintiff's constitutional rights. *Id.* Plaintiff's contention is predicated on Plaintiff's allegations that Cullen and Campbell's supervisors refused to respond satisfactorily to Lilly's complaints thus demonstrating "tacit approval," Complaint ¶ 13, of Cullen and Campbell's alleged violations of Plaintiff's rights. Plaintiff's Memorandum at 2-3. As such, Plaintiff also argues that as Defendants' motion is not directed to Plaintiff's claims against Cullen, Cullen was required to have filed an answer, Plaintiff's Memorandum at 3; however, Plaintiff has not sought a default against Cullen on this ground pursuant to Fed.R.Civ.P. 55. Defendants have not responded to this contention.

1. Defendant Campbell.

As noted, Plaintiff does not agree to dismissal to Plaintiff's First and Fourth Claims against Defendant Campbell. The court notes that Plaintiff's Fourth Claim does not specify against which Defendant this claim is asserted, however, in the interest of completeness and given that the Complaint was filed by Lilly then acting *pro se*, the court will assume Plaintiff intended to assert this claim against all Defendants.

Defendants contend the Complaint insofar as it alleges any claim against Campbell must be dismissed as there is no allegation liberally read that indicates any personal involvement by Campbell in connection with Lilly's encounter with Cullen including any alleged wrongful seizure of Lilly's driver's license and the alleged failure of the Defendant State Police to properly respond to Lilly's complaint regarding the matter. Defendants' Memorandum at 9-10 (citing caselaw). Plaintiff does not respond to Defendants' argument. It is established law that in the absence of a state actor's personal involvement in an alleged civil rights violation no liability for purposes of bringing an action pursuant to § 1983 may attach to a defendant. *See Warren v. Pataki*, 823 F.3d 125, 136 (2d Cir. 2016) (requiring Plaintiff's personal involvement in claimed § 1983 violation for liability); *Salahuddin v. Jones*, 992 F.2d 447, 449 (2d Cir. 1993) (same). Here, the only references to Campbell in the Complaint are that Cullen and Campbell have engaged in various forms of official misconduct, *e.g.*, lying, menacing, misuse of firearms, and other unprofessional conduct by a state trooper, Complaint ¶¶ 13-14, that Defendant Division of State Police have failed to "correct" such "bad actions," *id.* ¶ 17, and thereby have approved the misconduct of Cullen and Campbell, *id.* ¶ 18, of which other persons besides Lilly have complained. *Id.* ¶ 19. The Complaint also alleged Campbell issued traffic tickets to one Lenny Palumbo, a non-party, Complaint ¶ 27, handcuffed and abused Palumbo, *id.*, ¶ 28, in retaliation for Palumbo's political activities in connection with the local school board, *id.* ¶¶ 20-21, 27, and that Palumbo would be arrested by Cullen and Campbell if Lilly failed to stop distributing certain "fliers." *Id.* ¶ 29. Plaintiff also asserts the misconduct Plaintiff attributes to Cullen and Campbell is documented in various newspaper reports. Complaint ¶¶ 31-32. According to Plaintiff, Cullen and Campbell are self-annointed "predatory enforcers" of their "personal will, and are motivated by revenge and retaliation," Complaint ¶ 33, which behaviors Defendant State Police has failed

Lilly v. Cullen, Not Reported in Fed. Supp. (2017)
Case 1:19-cv-00157-MAD-TWD    Document 5    Filed 02/19/19    Page 13 of 32
2017 WL 1273972

to stop. Complaint ¶¶ 34-35. Plaintiff also alleges he commenced in 2011 a civil rights action in this court against Campbell, *Lilly v. Campbell*, 11-CV-540A(F), which remains pending. However, in connection with the traffic stop of Lilly by Cullen, which is the primary basis for the instant action, Plaintiff's only reference to Campbell is that Plaintiff "expected Defendant Campbell may arrive, fabricate charges and arrest" Lilly. Complaint ¶ 42 (underlining added). Significantly, after making this assertion, the Complaint thereafter in no way indicates that Campbell ever arrived at the scene, participated in the issuance of the traffic summons to Lilly, or became involved in the alleged wrongful confiscation and failure to return Lilly's driver's license. *See* Complaint (*passim*). The only other members of the New York State Police mentioned in the Complaint include Trooper Burns, Sergeants Anger, Engler, Lobur, and Schrader, Inspectors Steven White and Mark Fischer, and Colonel Anthony G. Ellis, all non-parties. *See* Complaint ¶¶ 57-59, 61-65. Thus, the Complaint fails to plausibly allege, *see Gray-Davis v.* Rigby, 2016 WL 1298131, at *8 (N.D.N.Y. Mar. 31, 2016) (*pro* se plaintiff's speculation that some of the defendants named in the complaint may have participated in alleged illegal search of plaintiff's home insufficient to state facts plausibly suggesting such defendants' personal involvement), any personal involvement by Campbell in Plaintiff's First and Fourth Claims and, as such, the Complaint should be DISMISSED as to Defendant Campbell.

**2. Injunctive Relief Against Defendant New York State Police**.

**\*3** Defendants contend Plaintiff's First, Fourth and Sixth Claims against Defendant New York State Police must be dismissed based on 11th Amendment immunity. Defendants' Memorandum at 5 (citing caselaw). Further, Defendants argue that as the Complaint does not request injunctive relief against this Defendant the doctrine of *Ex Parte Young*, 209 U.S. 123 (1908) allowing prospective equitable relief against state officials sued in their official capacity is inapplicable to Plaintiff's claims. *Id.* at 5-6. Defendants also contend that Plaintiff's state tort intentional distress claim must be dismissed under the Pennhurst Doctrine, *see Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 106 (1984) (under 11th Amendment federal court lacks jurisdiction over state law-based claim against state officers under court's pendent jurisdiction). However, as Plaintiff has acceded

to Defendants' dismissal request directed to Plaintiff's Fifth Claim for emotional distress, it is unnecessary to address this jurisdictional question. In opposition, Plaintiff contends that a liberal reading of Plaintiff's *pro se* complaint, as required, *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (*pro se* submissions "must be construed liberally and interpreted to raise the strongest arguments that they suggest"), indicates Plaintiff has requested equitable relief against Defendant New York State Police and requires Defendants' motion directed to this Defendant insofar as it requests such prospective equitable relief be denied. Plaintiff's Memorandum at 2-3. However, even if the Complaint is construed to include a request for equitable relief against future violations, such request is directed to Defendants Cullen and Campbell based on Plaintiff's claims in their official capacities and Defendant New York State Police including "[s]everal NYS police officials" who Plaintiff claims were aware of the alleged "illegal acts."

Plaintiff's claim against Defendant New York State Police fails at the outset inasmuch as the Division of New York State Police as a unit of New York State, is not a person subject to suit under § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 65 (1989) (a state is not suable as a person for purposes of § 1983). It is also settled that under the 11th Amendment, equitable relief is available only against state officials acting in their official capacity with respect to the conduct asserted in violation of federal law. *See Kelly v. New York State Civil Service Cmm'n*, 632 Fed.Appx. 17, at *18 (2d Cir. Jan. 25, 2016) (quoting *Ex Parte Young*, 209 U.S. 123, 154) (1908) ("The state officer against whom prospective relief is sought 'must have some connection with the enforcement of the act' that violates federal law."). Here, the Complaint provides no facts upon which it can be found that the Defendant New York State Police have any "connection" to the alleged violations under Plaintiff's First and Fourth Claims, nor significantly does the Complaint purport to name any State Police officials as defendants against whom injunctive relief may be directed, including the several members of the New York State Police to whom Plaintiff alleges he complained about Cullen's conduct without corrective action. As discussed, Discussion, *supra*, at 4-6, Defendant Campbell should be dismissed for lack of alleged personal involvement. Thus, there is no reason to consider Plaintiff's contention further as to Campbell.

Lilly v. Cullen, Not Reported in Fed. Supp. (2017)
Case 1:19-cv-00157-MAD-TWD    Document 5    Filed 02/19/19    Page 14 of 32
2017 WL 1273972

Finally, Plaintiff's Sixth Claim asserting liability against the New York State Police based on the violation of Plaintiff's rights alleged against Cullen, Campbell and other state police officers not named as defendants based on *respondeat superior*, should also be dismissed as a matter of law. It is well-established that a § 1983 claim may not be predicated on *respondeat superior. See Monell v. Department of Social Services,* 436 U.S 658, 692-94 (1978); *Jones v. Town of East Haven,* 691 F.3d 72, 80-81 (2d Cir. 2012). Additionally, Plaintiff fails to allege the violations resulted from any policy or practice by the State Police. *Littlejohn v. City of New York,* 795 F.3d 297 (2d Cir. 2015) (dismissing § 1983 claim for lack of personal involvement absent allegations of persistent or widespread municipal policy or custom enabling the asserted violation).

In sum, there is no allegation of involvement in any of Plaintiff's claims by any State Police official named as a defendant in his official capacity sufficient to support a request for equitable relief; any such relief is asserted solely as to Cullen who remains a defendant in the action.

## CONCLUSION

**\*4** Defendants' motion (Dkt. 2) should be GRANTED, Defendants Campbell and New York Division of State Police should be terminated as defendants in the action, Defendant Cullen should be directed to file an answer, and the matter should be remitted to the undersigned for entry of a case management order.

Attachment

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

ORDERED that this Report and Recommendation be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order. *Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2017 WL 1273972

Footnotes

1    Plaintiff's motion is addressed in a Decision and Order filed contemporaneously with this Report and Recommendation.
2    Taken from pleadings and papers filed in the case.

End of Document    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

2011 WL 1315485
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Michael D. PIERCE, Plaintiff,
v.
NEW YORK STATE POLICE (TROOP D
LOWVILLE), William C. Cross, Kurt W.
Lavalley, Todd A. Galarneau, Richard A.
Knight, Lewis County Sheriff L. Michael
Tabolt, Rickey E. Craft, Defendants.

No. 7:05–CV–1477 (GHL).
|
April 4, 2011.

**Attorneys and Law Firms**

Goettel, Poplaski & Dunn PLLC, Jason F. Poplaski, Esq.,
of Counsel, Watertown, NY, for Plaintiff.

Smith, Sovik, Kendrick & Sugnet, P.C., Robert P.
Cahalan, Esq., of Counsel, Syracuse, NY, for Defendants
Lewis County Sheriff's Department, Tabolt, Galarneau,
Knight, and LaValley.

Hon. Eric T. Schneiderman, Attorney General for the
State of New York, David B. Roberts, Esq., of Counsel,
Albany, NY, for Defendants.

***MEMORANDUM DECISION AND ORDER*** [1]

GEORGE H. LOWE, United States Magistrate Judge.

**\*1** In this action brought pursuant to 42 U.S.C. §
1983, Plaintiff Michael Pierce contends that Lewis County
and New York State officers wrongfully entered his
home, beat him, arrested him, searched his bedroom, and
denied him medical care. Currently pending before the
Court are motions by Defendants Richard Knight, Todd
Galarneau, Kurt LaValley, Michael Tabolt, and the Lewis
County Sheriff's Department ("County Defendants") and
Defendants William C. Cross and Ricky E. Craft ("State
Defendants") for partial summary judgment pursuant to
Federal Rule of Civil Procedure 56. (Dkt. Nos. 131 and
132.) Plaintiff has opposed the motions. (Dkt.Nos.136–

139.) For the reasons that follow, Defendants' motions are
granted in part and denied in part.

**I. FACTUAL HISTORY**

On the evening of August 2, 2005, at about 9:45 p.m.,
Defendant Lewis County Sheriff's Deputy Todd A.
Galarneau received a call from the father of a seventeen
year old boy, reporting that the boy had been the victim
of a sexual assault earlier that day. (Dkt. No. 131–2 ¶
16.) Just after the telephone conversation, the boy and his
parents came to the Lewis County Sheriff's Department to
make a formal complaint. *Id.*

At the station, the boy provided a supporting deposition.
*Id.* He stated that on August 2, 2005, he had been
working for a contractor measuring and documenting
insect infestation in a corn field. *Id.* ¶ 17. A man walked
into the field to see what the boy was doing. *Id.* While they
were alone in the field, the man asked the boy whether
he wanted "to have some fun." *Id.* When the boy asked
the man what he meant, the man stepped toward him and
grabbed the crotch of the boy's jeans, pushing his hand
against the boy's penis. *Id.* The man then tried to unbutton
the top of the boy's jeans. *Id.* The boy jumped away, telling
the man not to touch him and to stay away from him. *Id.*
The man said "I just wanna see, seeing never hurt," and
stepped toward the boy. *Id.* The boy turned and started
running. *Id.* The man grabbed him by the back of his shirt,
but lost his grip. *Id.* The boy ran to his car and drove away.
*Id.*

The boy described the man as being 5#8# tall,
approximately 50 years old, with metal splints affixed to
two of his fingers with tape. *Id.* ¶ 18. Defendant Galarneau
knew that the boy's description fit Plaintiff, who was a
registered level three sex offender who lived in the area of
the corn field. *Id.* ¶ 19. Defendant Galarneau showed the
boy an archival photograph of Plaintiff. *Id.* ¶ 20. The boy
recognized Plaintiff as the man who had assaulted him
in the day. *Id.*

Defendant Galarneau notified Defendant Sergeant
Richard A. Knight of the complaint and investigation.
*Id.* ¶ 21. Defendant Knight ran a criminal history report
on Plaintiff. *Id.* The criminal history report confirmed
that Plaintiff was a registered sex offender who had
been arrested on two prior violent sexual felony charges.
*Id.* ¶ 22. The criminal history report also indicated
that Plaintiff had a non-sexual felony arrest history for

burglary and a history of resisting arrest, intentionally damaging property, and aggravated harassment. *Id.* ¶ 23. He had served more than ten years in prison. [2] *Id.*

**\*2** Defendants Galarneau and Knight "determined that they would attempt to interview [Plaintiff] and ascertain if he was wearing finger splints" as the boy had described. (Dkt. No. 131–2 ¶ 24.) Further, because Plaintiff had a "violent criminal history, [Defendant] Deputy LaValley was called back in and the New York State Police was contacted for back-up if necessary." *Id.* ¶ 25.

Plaintiff alleges that Defendants arrived at his house at 12:30 a .m. (Dkt. No. 104 at 15.) Defendants do not state what time it was. Therefore, it is undisputed that the following events occurred after midnight.

The parties' accounts of what happened next vary widely. Defendants contend that upon arrival at Plaintiff's house, Defendants Knight and Galarneau went to the side door and knocked. (Dkt. No. 131–2 ¶ 26.) Defendants Craft, Cross, and LaValley remained outside. *Id.* ¶ 27. When Plaintiff's mother answered the door, Defendant Knight "asked her if we could come in and speak to her son .... The plaintiff's mother told us to go ahead and she let us into the house .... She yelled up to her son, but he did not answer. She then directed us up the stairs and told us that his room was to the left and then all the way to the front of the house." (Knight Decl., Dkt. No. 131–5 ¶¶ 31–34.) Plaintiff's mother "stated that she was in poor health and could not climb the stairs herself to get him." (Galarneau Decl., Dkt. No. 131–4 ¶ 28.)

Plaintiff contends, citing only his verified complaint, that Defendants Galarneau, Knight, Craft, Cross, and LaValley all "barged into" his house at the same time and "bullied their way past [P]laintiff's elderly mother." (Dkt. No. 138 ¶¶ 26–28, 30 .)

Defendants contend that they entered Plaintiff's room, saw that he had splints on his fingers, and began to question Plaintiff about the boy. (Dkt. No. 131–2 ¶¶ 31–33.) Plaintiff became agitated, raised his voice, and did not comply when he was instructed to turn around and put his hands behind his back. *Id.* ¶¶ 34–36. Defendants contend that Plaintiff "resisted arrest so pepper spray was used." *Id.* ¶ 36. Defendant LaValley heard raised voices through the open bedroom window and heard that pepper spray was going to be used, so he and Defendants Cross

and Craft "entered the house to render assistance." *Id.* ¶ 37. Defendants contend that "[w]hen LaValley, Cross, and Craft arrived at [Plaintiff's bedroom, pepper spray had been applied, and [Plaintiff] was on his feet, in the grasp of Deputy Galarneau, resisting his effort to pull his hands behind his back and place them in cuffs. During the struggle to put handcuffs on [Plaintiff], Deputy Galarneau and Trooper Cross fell to the floor on top of him." *Id.* ¶ 38. Defendant LaValley then "assisted by helping Trooper Cross handcuff [P]laintiff." *Id.* ¶ 39.

Plaintiff denies that he resisted Defendants. (Dkt. No. 138 ¶¶ 33–34.) Plaintiff declares that when Defendant LaValley entered the bedroom, he grabbed both of Plaintiff's arms "and restrained them behind his back, causing great pain." (Dkt. No. 137 ¶ 8.) While Defendant LaValley restrained Plaintiff, Defendant Knight "stood in front of him, held a flashlight directly into his face, and questioned him. During the questioning, Knight called [Plaintiff] a liar, ... closed his fist, and punched [Plaintiff] in the abdomen." *Id.* ¶¶ 9–10.

**\*3** Defendant Galarneau began to question Plaintiff. *Id.* ¶ 13. Plaintiff responded by asking Defendants if they had a warrant and telling them they should leave if they did not. *Id.* ¶ 14. Defendant Knight then punched Plaintiff again in the abdomen with a closed fist. *Id.* ¶ 15. Defendant Galarneau said "We do not need a fucking warrant," and punched Plaintiff in the ribs. *Id.* ¶ 17. Plaintiff could hear and feel his ribs break. *Id.* ¶ 18.

During these events, Defendant Cross "stood by but did not intervene, did not restrain his fellow officers, or assist" Plaintiff. *Id.* ¶ 21. Although Plaintiff was not resisting, Defendant Cross said that he had "better quit resisting us and tell us what we want to know or I will teach you a lesson about resisting us." *Id.* ¶ 19. Defendant Craft "removed his can of pepper spray and sprayed [Plaintiff] while he held the can directly upon his face." *Id.* ¶ 22. [3] Observing this, Defendant Cross said "That's not enough, do it again." *Id.* ¶ 23. Defendant Craft "again held his pepper spray against [Plaintiff]'s face" and discharged it. *Id.* ¶ 24. Defendant Cross told Defendant Craft to do it a third time, and Defendant Craft did. *Id.* ¶¶ 25–26. Defendant Craft then punched Plaintiff with a closed fist in the area of his left kidney. *Id.* ¶ 27. Defendant LaValley, who still had Plaintiff restrained, slammed Plaintiff's head into his dresser. *Id.* ¶ 29. Defendant Knight drove his elbow into Plaintiff's back, driving Plaintiff to

the floor. *Id.* ¶ 30. He then kicked Plaintiff in the buttocks, picked him up off the floor, grabbed his hands behind his back, and handcuffed him so hard that the cuffs cut off circulation to Plaintiff's left wrist. *Id.* ¶¶ 31–34.

Plaintiff declares that Defendants LaValley, Galarneau, Cross, and Craft searched his bedroom. (Dkt. No. 137 ¶¶ 35–38.) Defendants contend that they did so after "Plaintiff and his mother consented verbally to the search ..." (Dkt. No. 131–2 ¶ 40.)

Neither Defendants' statement of material facts nor the evidence filed supporting the statement includes any facts about what happened after the initial encounter between Plaintiff and the officers in Plaintiff's bedroom. (Dkt. No. 131–2.) Therefore, Plaintiff's version of events is undisputed. Plaintiff declares that Defendant Knight forcibly escorted him out of the house and into the rear passenger seat of the Sheriff's marked vehicle. (Dkt. No. 137 ¶ 39.) Plaintiff told Defendant Knight that his face was burning because of the pepper spray. *Id.* ¶ 41. Defendant Knight told Plaintiff that he would "put his face through that glass" if Plaintiff touched the glass divider between the front and rear seats. *Id.* ¶ 42. When Plaintiff told Defendant Knight that his handcuffs were too tight, Defendant Knight shook them violently and tightened them. *Id.* ¶¶ 43–44. When Plaintiff told Defendant Knight that he could not breathe, Defendant Knight told him to "tough it out." *Id.* ¶ 46.

 **\*4** Plaintiff was transported to the Lewis County Sheriff's Department. (Dkt. No. 137 ¶ 47.) He sat on a wooden bench in severe pain and had difficulty breathing. *Id.* ¶ 48. Defendant Galarneau "continually harassed and threatened" Plaintiff, "but offered no assistance with respect to his physical condition." *Id.* ¶ 49. When Plaintiff asked to see a doctor, Defendant Knight said "We are not going to spend any money on shit like you." *Id.* ¶¶ 51–52. Defendant Galarneau said "that another inmate would be able to tend to him medically instead of a doctor or physician." *Id.* ¶ 53.

An hour and a half later, Plaintiff was transported to court for his arraignment. (Dkt. No. 137 ¶ 54.) Plaintiff told the judge what had happened. *Id.* ¶ 55. Defendant LaValley told the judge that Plaintiff "was not going to a hospital, he was going to jail." *Id.* ¶ 56. Instead, the judge "called for an ambulance to provide medical care to" Plaintiff. *Id.* ¶ 57. Upon arriving, the ambulance provided Plaintiff

with oxygen and transported Plaintiff to Lewis County General Hospital. *Id.* ¶¶ 58–59. At the hospital, a nurse washed the pepper spray residue off of Plaintiff's face. *Id.* ¶ 60. Plaintiff was diagnosed with broken ribs, a bruised and bleeding left lung, a ruptured spleen, and damage to his kidney and his liver. *Id.* ¶ 61. Plaintiff was taken immediately to the emergency room to address the spleen injury. *Id.* ¶ 62. Plaintiff remained in the hospital for eight days, six of which were spent in the intensive care unit. *Id.* ¶¶ 63–64.

On February 3, 2006, Plaintiff pleaded guilty to one count of attempted sexual abuse in the first degree, arising from an encounter with a 17–year–old boy on August 2, 2005. (Dkt. No. 131–3 at 10.) The plea included a waiver of appeal. [4] *Id.* at 9.

## II. PROCEDURAL SUMMARY

Plaintiff, proceeding *pro se,* filed the original complaint in this action on November 28, 2005. (Dkt. No. 1.) He filed the operative complaint on December 31, 2008. (Dkt. No. 104.)

The operative complaint is a notarized twenty-nine page handwritten document. (Dkt. No. 104.) It contains a jurisdictional statement, a list of parties, an eleven-page statement of facts, twelve causes of action, and a prayer for relief. *Id.* Plaintiff claims that Defendants committed "hate crime assault" and violated the Fourth Amendment, the Eighth Amendment, the "Fourteenth Amendment Right [to] equal protection of the laws." *Id.* at 15–22.

On December 29, 2009, Jason F. Poplaski, Esq., was appointed as counsel for Plaintiff "for the purposes of trial only." (Dkt. No. 119.) Mr. Poplaski filed a Notice of Appearance on January 6, 2010. (Dkt. No. 120.) On October 20, 2010, the parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Dkt. No. 127.) Trial is scheduled for April 18, 2011. (Feb. 1, 2011, Text Order.)

## III. APPLICABLE LEGAL STANDARDS

### A. Legal Standard Governing Motions for Summary Judgment

 **\*5** Under Federal Rule of Civil Procedure 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and the movant

is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists. Only after the moving party has met this burden is the nonmoving party required to produce evidence demonstrating that genuine issues of material fact exist. *Salahuddin v. Goord,* 467 F.3d 263, 272–73 (2d Cir.2006). The nonmoving party must do more than "rest upon the mere allegations ... of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, a dispute regarding a material fact is *genuine* "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining whether a genuine issue of material [5] fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino,* 542 F.3d 290, 309 (2d Cir.2008).

**B. Legal Standard Governing Motions to Dismiss for Failure to State a Claim**

To the extent that a defendant's motion for summary judgment under Federal Rule of Civil Procedure 56 is based entirely on the allegations of the plaintiff's complaint, such a motion is functionally the same as a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). As a result, "[w]here appropriate, a trial judge may dismiss for failure to state a cause of action upon motion for summary judgment." *Schwartz v. Compagnie Gen. Transatlantique,* 405 F.2d 270, 273 (2d Cir.1968) (citations omitted); *accord, Katz v. Molic,* 128 F.R.D. 35, 37–38 (S.D.N.Y.1989) ("This Court finds that ... a conversion [of a Rule 56 summary judgment motion to a Rule 12(b)(6) motion to dismiss the complaint] is proper with or without notice to the parties."). Accordingly, it is appropriate to summarize the legal standard governing Federal Rule of Civil Procedure 12(b)(6) motions to dismiss.

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) on the ground that the complaint fails to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain, *inter*

*alia,* "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a) (2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)) (emphasis added). "Determining whether a complaint states a plausible claim for relief ... requires the ... court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 1950 (internal citation and punctuation omitted).

**\*6** "In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor ." *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994) (citation omitted). Courts are "obligated to construe a *pro se* complaint liberally." *Harris v. Mills,* 572 F.3d 66, 72 (2d Cir.2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 129 S.Ct. at 1949.

**IV. ANALYSIS**

**A. Eighth Amendment Claims**

Plaintiff claims that Defendants violated his Eighth Amendment rights. (Dkt. No. 104 at 16–20.) Defendants argue that the complaint fails to state an Eighth Amendment claim. (Dkt. No. 131–3 at 5–6; Dkt. No. 132–1 at 20.)

Plaintiff's opposition to the motions for summary judgment does not assert any arguments regarding the Eighth Amendment. (Dkt. No. 136.) A party's failure to oppose a portion of a motion requesting dismissal constitutes consent to the unopposed argument. *Burns v. Trombly,* 624 F.Supp.2d 185, 197 (N.D.N.Y.2008). In such circumstances, the moving party's burden is "modest" and the party will prevail so long as the argument is "facially meritorious." *Id.* at 197–98.

Defendants have met their burden. The Eighth Amendment only applies to convicted prisoners. *Graham v. Connor,* 490 U.S. 386, 392 n. 6, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); *Bell v. Wolfish,* 441 U.S. 520, 535 n. 16, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Plaintiff was not a convicted prisoner at the time of the incident giving rise to this lawsuit. Therefore, I grant Defendants' motions for summary judgment and dismiss Plaintiff's Eighth Amendment claims.

### B. Equal Protection Claims

Plaintiff claims that Defendants violated his rights under the Equal Protection Clause. (Dkt. No. 104 at 15–22.) Defendants argue that the complaint fails to state an equal protection claim. (Dkt. No. 131–3 at 8; Dkt. No. 132–1 at 20–21.) Plaintiff's opposition to the motions for summary judgment does not assert any arguments regarding the Equal Protection Clause. (Dkt. No. 136.)

Defendants have met their burden of showing that their unopposed argument is facially meritorious. The Equal Protection Clause provides that "no State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. This is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). The Equal Protection Clause "bars the government from selective adverse treatment of individuals compared with other similarly situated individuals if 'such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.' " *Bizzarro v. Miranda,* 394 F.3d 82, 86 (2d Cir.2005) (emphasis omitted) (quoting *LeClair v. Saunders,* 627 F.2d 606, 609–10 (2d Cir.1980)). Governmental action may also violate the Equal Protection Clause where the defendants intentionally treat the plaintiff "differently from others with no rational basis for the difference in treatment." *Id.* (citing *Vill. of Willowbrook v. Olech,* 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000)). Thus, a plaintiff asserting an equal protection claim must allege facts plausibly suggesting that (1) he was treated differently from similarly situated individuals; and (2) the defendants treated him differently due to his membership in a suspect class, inhibited his exercise of a fundamental right, acted out of malice, or acted irrationally and arbitrarily.

*7 Here, Plaintiff does not assert that he is a member of a suspect class. Nor does he assert that Defendants inhibited or punished his exercise of a fundamental right. [6] Plaintiff's equal protection claim is thus properly classified as a "class-of-one" claim, alleging that Defendants acted either out of malice or irrationally and arbitrarily.

It is extremely difficult for class-of-one plaintiffs to allege facts plausibly suggesting that they were treated differently from similarly situated individuals. "[C]lass-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Clubside, Inc. v. Valentin,* 468 F.3d 144, 159 (2d Cir.2006.)

Here, Plaintiff has not asserted that he was treated differently from any similarly situated individual. (Dkt. No. 104.) He has not even alleged cursorily that other individuals were treated differently than he was, much less shown an "extremely high degree of similarity" between himself and some other person. Therefore, I grant Defendants' motions for summary judgment and dismiss Plaintiff's equal protection claim.

### C. "Hate Crime" Claims

Plaintiff alleges that Defendants committed "hate crime assaults" against him. (Dkt. No. 104 at 16–18, 20.) Defendants argue that the complaint fails to state a hate crime claim. (Dkt. No. 131–3 at 8 n.4; Dkt. No. 132–1 at 20.) Plaintiff's opposition to the motions for summary judgment does not assert any arguments regarding the hate crime claims. (Dkt. No. 136.)

Defendants have met their burden of showing that their unopposed argument is facially meritorious. New York's hate crime law, Penal Law § 485.05, is a criminal statute that prohibits the commission of offenses based on "a belief or perception regarding the race, color, national origin, ancestry, gender, religion, religious practice, age, disability or sexual orientation of a person ...." Here, the complaint does not allege that Plaintiff is a member of any protected group or that Defendants believed he was. (Dkt. No. 104.) Moreover, even if the complaint did include such an allegation, violations of New York's hate crime law do not give rise to constitutional claims that are cognizable under § 1983. *Jones v. Harris,* 665 F.Supp.2d 384, 404 (S.D.N.Y.2009).

Further, although the Second Circuit has not yet addressed the issue, district courts have held that the federal criminal hate crime statute, 18 U.S.C. § 249(a), does not create a private right of action. *Wolfe v. Beard,* No. 10–2566, 2011 U.S. Dist. LEXIS 15339, at *10, 2011 WL 601632, at *3 (E.D.Pa. Feb.15, 2011); *Lorenz v. Managing Director, St. Luke's Hospital,* No. 09 Civ. 8898(DAB)(JCF), 2010 U.S. Dist. LEXIS 127746, at *20–21, 2010 WL 4922267, at *8 (S.D.N.Y. Nov. 5, 2010); *Lee v. Lewis,* No. 2:10–CV–55–F, 2010 U.S. Dist. LEXIS 129816, at *5–6, 2010 WL 5125327, at *2 (E.D.N.C. Oct. 28, 2010). In the absence of any briefing from Plaintiff on this issue, I grant Defendants' motions for summary judgment and dismiss Plaintiff's hate crime claims.

### D. Unreasonable Entry Claim

**\*8** Plaintiff alleges that Defendants violated his Fourth Amendment rights when they entered his home after midnight without a warrant. (Dkt. No. 104 at 14–15.) Defendants move for summary judgment of this claim, arguing that the undisputed facts show that Plaintiff's mother consented to Defendants' entry. (Dkt. No. 131–3 at 19.) Defendants are correct.

"The Fourth Amendment recognizes a valid warrantless entry and search of premises when police obtain the voluntary consent of an occupant who shares, or is reasonably believed to share, authority over the area in common with a co-occupant who later objects to the use of evidence so obtained." *Georgia v. Randolph,* 547 U.S. 103, 106, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006).

Here, as discussed above, the undisputed facts show that Plaintiff's mother consented to Defendants entering the home. Although Plaintiff asserts that Defendants barged into the house and bullied his mother, he has not presented any admissible evidence supporting that assertion. Plaintiff relies entirely on his verified complaint. (Dkt. No. 138 ¶ 26.) A verified pleading "has the effect of an affidavit and may be relied on to oppose summary judgment," but only where "it makes allegations on the basis of the plaintiff's personal knowledge, and not merely on information and belief ...." *Patterson v. County of Oneida,* 375 F.3d 206, 219 (2d Cir.2004); *Spence v. Maryland Cas. Co.,* 803 F.Supp. 649, 664 (W.D.N.Y.1992) (rejecting affidavit made on "secondhand information and hearsay"), *aff'd,* 995 F.2d 1147 (2d Cir.1993). Here, Plaintiff admits that he was upstairs when Defendants

entered the home. (Dkt. No. 138 ¶ 31.) He does not set forth any basis of personal knowledge for his assertion that Defendants entered without consent. Plaintiff has not provided an affidavit from his mother[7], the only person other than Defendants with personal knowledge. Therefore, the only admissible facts before the Court are that Plaintiff's mother let the officers into the house and directed them to Plaintiff's room.

Plaintiff argues that the "allegations relating to the entry are absolutely disputed. [Plaintiff] contends the police entry into his home was not consensual. He [went] so far as to request a warrant and ask the police to leave." (Dkt. No. 136 at 2.) Although he does not cite any authority, Plaintiff may be relying on *Georgia v. Randolph.* In that case, the Supreme Court held that police may not enter a home on a "consent" theory when one co-tenant consents and another co-tenant simultaneously objects. *Georgia,* 547 U.S. at 121. However, the Court stated that its holding was quite narrow and acknowledged that "we are drawing a fine line; if a potential defendant with self-interest in objecting is in fact at the door and objects, the co-tenant's permission does not suffice for a reasonable search, whereas the potential objector, nearby but not invited to take part in the colloquy, loses out." *Id.* The fact that Plaintiff asked Defendants to leave when they entered his bedroom without a warrant is, thus, immaterial to the issue of consent because he was not "in fact at the door." Therefore, I grant Defendants' motions for summary judgment of Plaintiff's Fourth Amendment claim regarding Defendants' warrantless entry into his home.

### E. False Arrest Claims

**\*9** Plaintiff claims that Defendants violated his Fourth Amendment rights when they arrested him. (Dkt. No. 104 at 15, 20–21.) Defendants move for summary judgment of this claim, arguing that (1) Plaintiff's guilty plea bars the claim; and (2) Defendants had probable cause to arrest Plaintiff. (Dkt. No. 131–3 at 9; Dkt. No. 132–1 at 5.)

#### 1. Guilty Plea

The elements of a Fourth Amendment false arrest claim under 42 U.S.C. § 1983 are the same as those for a false arrest claim under New York law. *Kraft v. City of New York,* 696 F.Supp.2d 403, (S.D.N.Y.2010). "To state a claim for false arrest under New York law, a plaintiff must show that (1) the defendant intended to

confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged." *Savino v. City of New York,* 331 F.3d 63, 75 (2d Cir.2003) (punctuation and citation omitted). Where an officer has probable cause to arrest a plaintiff, the confinement is privileged. *Id.* at 76. The burden of showing that there was probable cause for the arrest is on the officer. *Id.*

Defendants argue that Plaintiff's guilty plea bars his false arrest claim. (Dkt. No. 131–3 at 9; Dkt. No. 132–1 at 5.) As Defendants correctly note, entry of a guilty plea "operates as a defense to a Section 1983 action for arrest without probable cause." *Roundtree v. City of New York,* 778 F.Supp. 614, 619 (E.D.N.Y.1991). Plaintiff does not dispute that this is the state of the law. Rather, Plaintiff "denies the related criminal matter was resolved by a guilty plea. He claims the case is still unresolved on appeal." (Dkt. No. 136 at 2.)

Plaintiff has not raised a triable issue of fact on this issue. In opposition to the motions for summary judgment, Plaintiff declares that "he never pleaded guilty as a matter of law in the related criminal matter," that he "exhausted his direct appeal rights," and that he filed a petition for writ of habeas corpus "in New York state court and that matter is currently before the New York State Supreme Court Appellate Division, Fourth Department and is scheduled for oral argument on April 22, 2011." (Dkt. No. 137 ¶¶ 65–67.) Other than his own declaration, Plaintiff has not provided the Court with any evidence regarding his guilty plea, appeal, and habeas petition. Plaintiff has not requested judicial notice of any documents. According to the court calendar on the Fourth Department's web site, the court's April Term closes on Friday, April 15, 2011, and the May Term does not begin until Monday, May 16, 2011. New York State United Court System, Appellate Division, Fourth Department, http://www.courts.state.ny.us/ad4 (Calendar/Terms of Court) (Last visited March 30, 2011). It thus does not appear that any cases are scheduled for oral argument before the Fourth Department on April 22, 2011. Accordingly, I find that the undisputed facts show that Plaintiff pleaded guilty to one count of attempted sexual assault in the first degree.

**\*10** As the State Defendants note, "[p]erhaps Plaintiff's denial of his 'guilty' plea is based on an unarticulated argument that he initially [was] charged with Sexual Abuse

in the First Degree and Resisting Arrest, but he pled guilty to Attempted Sexual Abuse in the First Degree." (Dkt. No. 141 at 5.) If Plaintiff is indeed implicitly making such an argument, it is without merit. "[A] plea of guilty to a charge lesser than that for which plaintiff was arrested also bars a Section 1983 action for arrest without probable cause." *Roundtree,* 778 F.Supp. at 619.

The undisputed facts establish that Plaintiff pleaded guilty to one count of attempted sexual abuse in the third degree. Therefore, I grant Defendants' motions for summary judgment of Plaintiff's false arrest claim.

### 2. *Probable Cause*

Defendants argue that they would be entitled to summary judgment of Plaintiff's false arrest claim even if Plaintiff had not pleaded guilty because the undisputed facts show that Defendants had probable cause to arrest Plaintiff. (Dkt. No. 132–1 at 7–17.)

"Probable cause to arrest exists when the arresting officer has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Escalera v. Lunn,* 361 F.3d 737, 743 (2d Cir.2004) (internal quotation marks and citation omitted). "An arresting officer advised of a crime by a person who claims to be the victim, and who has signed a complaint or information charging someone with a crime, has probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity." *Singer v. Fulton County Sheriff,* 63 F.3d 110, 119 (2d Cir.1995).

Plaintiff was charged with, *inter alia,* sexual abuse in the first degree. (Dkt. No. 131–4 at 17.) Under New York law, a person is guilty of this crime "when he or she subjects another person to sexual contact ... by forcible compulsion." N.Y. Penal Law § 130.65(1) (McKinney 2004). Sexual contact includes "any touching of the sexual ... parts of a person ... for the purpose of gratifying sexual desire ... includ[ing] the touching of ... the victim by the actor, whether directly or through clothing." N.Y. Penal Law § 130.00(3) (McKinney 2004.)

The boy provided a sworn supporting deposition that a man about 5#8# tall with brownish colored mid length hair and metal splints on two fingers asked him if he "want[ed] to have some fun" and then grabbed the crotch

of his jeans. (Dkt. No. 131–4 at 19–20.) The boy also swore that he "was shown a picture by Deputy Galarneau [and] the picture of the person was definately (sic) the person who attacked me in the cornfield." *Id.* at 20. Defendant Galarneau declares that the picture was of Plaintiff. (Dkt. No. 131–4 ¶ 20.) The boy's statement provided the officers with probable cause.

**\*11** Plaintiff argues, without citation to any evidence, that he "denie[s] the criminal conduct happened and questions the facts that drew the Defendants' attention to him." (Dkt. No. 136 at 2.) Plaintiff's denial that he committed the crime does not raise a triable issue of fact that Defendants lacked probable cause to believe that he had. Therefore, even if Plaintiff had not pleaded guilty, I would grant Defendants' motions for summary judgment and dismiss Plaintiff's false arrest claim.

### F. Unreasonable Search Claims

Plaintiff's first cause of action is labeled "unreasonable search." (Dkt. No. 104 at 15.) Plaintiff alleges that while Defendant Knight held him in the police car, the other Defendants searched his bedroom for "about an hour." *Id.* at 19. Construed liberally, these allegations could constitute a Fourth Amendment unreasonable search claim. Defendants move for summary judgment dismissing this claim. (Dkt. No. 131–3 at 9; Dkt. No. 132–1 at 5–7.) Plaintiff's opposition brief does not address this argument.

"In order to recover compensatory damages [based on an allegedly unreasonable search], the § 1983 plaintiff must prove not only that the search was unlawful, but that it caused him actual, compensable injury, which ... does *not* encompass the 'injury' of being convicted and imprisoned." *Heck v. Humphrey,* 512 U.S. 477, 487 n. 7, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) (emphasis in original). Here, Plaintiff declares that "Defendants destroyed much of Mr. Pierce's property and belongings while the Defendants detained Mr. Pierce in handcuffs." (Dkt. No. 137 ¶ 69.) In reply, the State Defendants assert that Plaintiff's declaration is too conclusory to raise a triable issue of fact. (Dkt. No. 141 at 7.) I find that Plaintiff's declaration is, just barely, enough to raise a triable issue of fact. Therefore, Defendants' motions for summary judgment are denied as to Plaintiff's claim that the post-arrest search of his bedroom was unreasonable.

### G. Excessive Force Claims

Plaintiff claims that Defendants used excessive force. (Dkt. No. 104 at 15–21.) Defendants concede that these claims should proceed to trial. (Dkt. No. 131 at 2; Dkt. No. 132–1 at 2–3.) Trial will begin on April 18, 2011.

### H. Medical Care Claims

Plaintiff claims that Defendants Knight and Galarneau were deliberately indifferent to his serious medical needs. (Dkt. No. 104 at 19, 22.)

Before conviction, a plaintiff's claim that defendants were deliberately indifferent to his serious medical needs is governed by the Fourteenth Amendment's Due Process Clause rather than by the Eighth Amendment. *Caiozzo v. Koreman,* 581 F.3d 63, 72 (2d Cir.2009) (holding that deliberate indifference standard applies to pretrial detainee's due process claim regarding denial of medical care); *Weyant v. Okst,* 101 F.3d 845, 856 (2d Cir.1996) ("The rights of one who has not been convicted [including any right to medical care] are protected by the Due Process Clause."); *Rasmussen v. City of New York,* ——F.Supp.2d. ——, No. 10 Civ. 1088(BMC), 2011 U.S. Dist. LEXIS 10089, at \*31–32, 2011 WL 477713, at \* 10 (E.D.N.Y. Feb. 2, 2011) (analyzing arrestee's claim that officers denied her medical care under Due Process Clause, using deliberate indifference test).

**\*12** The parties disagree about whether or not the complaint properly asserts claims under the Due Process Clause. (Dkt. No. 131–2 ¶ 2; Dkt. No. 138 ¶ 2.) Plaintiff argues that the complaint "pleaded violations of the Fourteenth Amendment; therefore, [Plaintiff] pleaded a violation of his due process rights." (Dkt. No. 138 ¶ 2.) Defendants argue that Plaintiff has not asserted a due process claim because each cause of action refers to the Fourteenth Amendment's guarantee of "the equal protection of the laws." (Dkt. No. 131–3 at 6.)

Courts must "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest possible arguments that they suggest.' " *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999) (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)). This requirement applies to any pleading drafted by a *pro se* litigant and continues even if the litigant later retains counsel. *See Malcolm v. Honeoye Falls–Lima Educ. Ass'n,* 678 F.Supp.2d 100, 104 (W.D.N.Y.2010) ("the Court notes that plaintiff's

2011 WL 1315485

complaint, even viewed liberally in light of her pro se status at the time it was filed ...."). Therefore, I must liberally construe Plaintiff's complaint.

Construed as raising the strongest possible arguments it suggests, Plaintiff's complaint alleges that Defendants Knight and Galarneau violated his due process rights by acting with deliberate indifference to his serious medical needs. Therefore, I reject Defendants' argument that the complaint does not include a due process claim.

Defendants have not advanced any argument or provided any evidence that they were not deliberately indifferent to Plaintiff's serious medical needs. Therefore, this claim will proceed to trial on April 18, 2011.

### I. Failure to Intervene Claim

Plaintiff claims that either Defendant Cross or Defendant Craft failed to intervene as the other Defendants were using excessive force on Plaintiff. (Dkt. No. 104 at 20.) [8] Such claims are governed by the Due Process Clause. *Rosen v. City of New York,* 667 F.Supp.2d 355, 359–60 (S.D.N.Y.2009) (officer's alleged failure to intervene to protect a pretrial detainee from harm analyzed under Due Process Clause). Defendants have not presented any arguments regarding Plaintiff's failure-to-intervene claim, other than to argue that the complaint does not assert a due process cause of action. As discussed above, the complaint when liberally construed includes a due process claim. Therefore, this claim will proceed to trial.

### J. Monell Claims

In his prayer for relief, Plaintiff alleges that Defendants Knight, Galarneau, LaValley, Cross, and Craft would not have used the allegedly excessive force "had they been properly trained." (Dkt. No. 104 at 23–26.) Liberally construed, the complaint thus includes a failure-totrain cause of action against the New York State Police [9] and the Lewis County Sheriff's Department [10].

**\*13** Defendants move for summary judgment of this claim. (Dkt. No. 131–3 at 13–15; Dkt. No. 132–2 at 22.) Plaintiff's brief does not address this argument. (Dkt. No. 136.)

Regarding the New York State Police, Plaintiff's claim is barred both by the Eleventh Amendment and by the

language of § 1983. *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 66–71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Therefore, I grant Defendants' motions for summary judgment dismissing any claims against the New York State Police.

Regarding the Lewis County Sheriff's Department, a "municipality or other local government may be liable [under § 1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson,* 131 S.Ct. 1350, 179 L.Ed.2d 417, at *6 (Mar. 29, 2011) (citing *Monell v. New York City Dept. of Social Servs.,* 436 U.S. 658, 692, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). A local government entity's alleged failure to train its employees creates liability under § 1983 only "[i]n limited circumstances." *Id.* Indeed, a "municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id.* at *7. The "stringent standard" of "deliberate indifference" applies to failure-to-train claims. *Id.* In order to prevail, the plaintiff must demonstrate that the municipality was "on actual or constructive notice that a particular omission in [its] training program causes ... employees to violate citizens' constitutional rights [and] the policymakers chose to retain that program." *Id.* "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Id.* at *8 (citing *Board of Comm'rs of Bryan Cty. v. Brown,* 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)).

Here, each of the County Defendants has filed a declaration describing the training they received regarding the appropriate use of force. (Dkt. No. 131–2 ¶ 41–43.) In his opposition to Defendants' statement of facts, Plaintiff "disputes" that Defendants received proper training. (Dkt. No. ¶¶ 41–43.) However, the only evidence Plaintiff cites for this proposition is his own complaint. *Id.* Plaintiff has not set forth any basis of personal knowledge regarding the officers' training. Therefore, Plaintiff has not raised a triable issue of fact. Accordingly, I grant the County Defendants' motions for summary judgment dismissing the failure-to-train claim against the Lewis County Sheriff's Department.

### K. Claims Against Defendant Tabolt

The complaint appears to assert a failure-to-train claim against Defendant L. Michael Talbot. (Dkt. No. 104 at 24–25.) The County Defendants move for summary judgment of this claim. (Dkt. No. 131–3 at 16–17.) Plaintiff's brief does not address this argument. (Dkt. No. 136.)

Under Second Circuit precedent, " 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' " *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (quoting *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991)). In order to prevail on a § 1983 cause of action against an individual, a plaintiff must show some tangible connection between the unlawful conduct and the defendant. *Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986). If the defendant is a supervisory official, a mere "linkage" to the unlawful conduct through "the prison chain of command" (i.e., under the doctrine of *respondeat superior* ) is insufficient to show his or her personal involvement in that unlawful conduct. *Polk County v. Dodson,* 454 U.S. 312, 325, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981); *Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003); *Wright,* 21 F.3d at 501; *Ayers v. Coughlin,* 780 F.2d 205, 210 (2d Cir.1985). In other words, supervisory officials may not be held liable merely because they held a position of authority. *Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir.1996). Rather, supervisory personnel may be considered "personally involved" if they (1) directly participated in the violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to

the rights of inmates by failing to act on information indicating that the violation was occurring. *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995). [11]

**\*14** Here, Defendants have presented the facially meritorious argument, based on the declaration of Defendant Tabolt, that none of the *Colon* categories applies. (Dkt. No. 131–7.) Plaintiff has not raised a triable issue of fact. Therefore, I grant the motion for summary judgment and dismiss all claims against Defendant Tabolt.

**ACCORDINGLY,** it is

**ORDERED** that the motions for summary judgment (Dkt. Nos. 131 and 132) are **GRANTED IN PART AND DENIED IN PART.** The following claims are dismissed: (1) all Eighth Amendment claims; (2) all equal protection claims; (3) all hate crime claims; (4) the Fourth Amendment claim regarding Defendants' entry into Plaintiff's house; (5) all false arrest claims; (6) all claims against the New York State Police; (7) all claims against the Lewis County Sheriff's Department; and (8) all claims against Defendant Tabolt. The following claims will proceed to trial on April 18, 2011:(1) the Fourth Amendment claim regarding the post-arrest search of Plaintiff's bedroom; (2) the excessive force claims; (3) the due process claims against Defendants Knight and Galarneau for deliberate indifference to Plaintiff's serious medical needs; and (4) the due process failure-to-intervene claim against Defendant Cross or Craft.

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 1315485

Footnotes

1    This matter is before the Court by consent of both parties. (Dkt. No. 127.)
2    In his opposition to the motions for summary judgment, Plaintiff purports to deny these facts. Plaintiff states, in full, that he "denies that he committed a sexual assault at any point or time that is at issue in this matter." (Dkt. No. 138 ¶¶ 16–23.) Plaintiff's "denial" does not raise a dispute of material fact on any relevant issue. It is immaterial whether or not Plaintiff committed the crime. As discussed below, the relevant inquiries are what information Defendants received before going to Plaintiff's home and whether Plaintiff pleaded guilty. Plaintiff's "denial" does not dispute Defendants' version of these relevant facts.
3    The complaint's version of events reverses the identities of Defendants Cross and Craft, stating that Craft stood by without intervening and that Cross used the pepper spray. (Dkt. No. 104 at 7.)
4    State Defendants request that the Court take judicial notice of the transcript of Plaintiff's plea hearing in Lewis County Supreme Court. (Dkt. No. 132–1 at 5.) Judicial notice is appropriate, and I grant Defendants' request. *Davis v. Cotov,* 214 F.Supp.2d 310, 315 (E.D.N.Y.2002) (taking judicial notice of the fact that Plaintiff pleaded guilty to a parole violation);

*Marshall v. City of New York,* No. _____, 2010 U.S. Dist. LEXIS ——, at \*——, 2010 WL 4739810, at \*2 n. 1 (S.D.N.Y._____, 2010) (taking judicial notice of state court guilty plea in context of subsequent § 1983 false arrest action); *Rodriguez v. Patterson,* No. 04 civ. 25(MRK), 2006 WL 1272620, at \*2 (D.Conn. Apr. 5, 2006) (taking judicial notice that the plaintiff pleaded guilty to two separate counts).

5    A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson,* 477 U.S. at 248.

6    The fundamental rights as identified by the United States Supreme Court fall into six substantive categories: (1) the right to freedom of association; (2) the right to vote; (3) the right to interstate travel; (4) the right to fairness in the criminal process (which includes the right to counsel and the right of access to the courts); (5) the right to procedural due process; and (6) the right to privacy "which includes various forms of freedom of choice in matters relating to the individual's personal life" such as freedom of choice in marital decisions, child bearing, and child rearing. 2 Ronald D. Rotunda & John E. Nowak, *Treatise On Constitutional Law Substance and Procedure,* § 15.7 (4th ed.2010).

7    Plaintiff characterizes his mother as being "elderly" in August 2005. (Dkt. No. 137 ¶ 3.) The record suggests that Plaintiff's mother was ill at the time of Plaintiff's guilty plea in 2006. (Dkt. No. 131–3 at 34–35.) However, Plaintiff has not advanced any explanation, such as ill health or death, for the absence of a declaration from his mother.

8    I note again that the complaint and Plaintiff's affidavit in opposition to the motions for summary judgment differ regarding this incident, reversing the identities of Defendants Cross and Craft. (Dkt. NO. 137 ¶¶ 21–27; Dkt. No. 104 at 7, 20.)

9    The complaint lists "New York State Police, Troop D, Lowville" as a defendant in the caption, but not in the list of parties. (Dkt. No. 104 at 1–3.)

10   The complaint does not name the Lewis County Sheriff's Department as a defendant in either the caption or the list of parties, but does request "punitive and monetary damages ... from Defendant, the Lewis County Sheriff Department." (Dkt. No. 104 at 24–25.)

11   In *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009), the Supreme Court ruled that where the underlying constitutional claim is a claim of intentional discrimination, a supervisory official's liability must be judged by the official's purpose rather than the official's knowledge of subordinates' actions or policies. The Second Circuit has not yet issued a decision discussing *Iqbal'* s effect on the *Colon* categories. Several district courts in the Second Circuit have determined that *Iqbal* nullified some of the *Colon* categories. *See Sash v. United States,* 674 F.Supp.2d 531, 543–44 (S.D.N.Y.2009) (collecting cases). I will assume for the purposes of these motions that *Colon* remains good law.

---

**End of Document**                                                                                                       © 2019 Thomson Reuters. No claim to original U.S. Government Works.

2018 WL 1832929
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Russell RILEY, Plaintiff,

v.

Andrew CUOMO, in his official capacity
as governor of the State of New York,
New York State Police, Defendant(s).

2:17-cv-01631 (ADS)(AYS)
|
Signed 04/16/2018

**Attorneys and Law Firms**

Christopher Joseph Cassar, 13 East Carver Street,
Huntington, NY 11743, By: Christopher J. Cassar, Esq.,
Of Counsel, Attorney for the Plaintiff.

New York State Office of the Attorney General, Nassau
Regional Office, 200 Old Country Road, Suite 240,
Mineola, NY 11501, By: Christina H. Bedell, Assistant
Attorney General, Counsel for the Defendants.

**MEMORANDUM OF DECISION & ORDER**

ARTHUR D. SPATT, United States District Judge

*1 The Plaintiff Russel Riley (the "Plaintiff") brought
this federal civil rights action pursuant to 42 U.S.C. § 1983
("Section 1983") against the Defendants Andrew Cuomo,
in his official capacity of the Governor of the State of
New York ("Governor Cuomo," the "Governor," or
"Cuomo") and the New York State Police (the "NYSP")
(collectively, the "Defendants").

Presently before the Court is a motion by the Defendants
to dismiss the complaint pursuant to Federal Rule of Civil
Procedure ("FED. R. CIV. P.") 12(b)(1) and 12(b)(6). For
the following reasons, the Defendants' motion is granted
in its entirety.

**I. BACKGROUND**

**A. The Relevant Facts**

The following facts are drawn from the Plaintiff's
complaint, and for the purposes of the instant motion, are
presumed to be true.

The Plaintiff owned and had a valid license for ten
firearms. On January 9, 2017, members of the NYSP
entered the Plaintiff's home without a warrant and seized
ten firearms.

The firearms have not been returned to the Plaintiff, and
there has been no hearing regarding the seizure of the
firearms.

The Plaintiff makes broad references to the New York
Secure Ammunition and Firearms Enforcement Act of
2013 (the "NY SAFE Act"), but does not explicitly state
that his firearms were confiscated as a result of that
statute.

**B. The Relevant Procedural History**

On March 23, 2017, the Plaintiff filed his complaint.
The complaint alleges that the NY SAFE Act is
unconstitutional under the Fourth and Fourteenth
Amendments to the United States Constitution in that it
fails to provide gun owners who have had their firearms
seized with a hearing. However, the Plaintiff does not seek
a declaratory judgment declaring that the NY SAFE Act
is unconstitutional. Furthermore, as stated above, he does
not explicitly state that his guns were seized because of
that statute; or, if they were, how that statute caused his
firearms to be seized.

The complaint alleges that the Plaintiff's Fourth, Fifth,
and Fourteenth Amendment rights were violated when
the Defendants seized his firearms without a warrant;
failed to provide him with a hearing; and illegally obtained
statements from him. In those ways, the Defendants
allegedly violated Section 1983.

The Plaintiff seeks declaratory relief in the form of
an order stating that the Defendants violated his
constitutional rights. He asks that the Court order that
the firearms be returned to him. Further, he seeks "a
judgment ... requiring the Defendants to conduct a
prompt hearing following the seizure of the property in
all cases at which time the Defendants must demonstrate
probable cause for the seizure of the property and that it
was necessary that the property remain in the custody of
the Defendants." (Compl. Wherefore Clause ¶ 3).

The Plaintiff seeks injunctive and declaratory relief; and a judgment requiring the Defendants to provide notice and a hearing to any future victims of seizures similar to the one experienced by the Plaintiff. The complaint does not explicitly seek damages, but only reasonable attorneys' fees and costs. While the Court notes that the Plaintiff's memorandum in opposition to the motion to dismiss states that "the underlying complaint is not exclusively seeking an award of damages under § 1983," (Pl.'s Mem. in Opp. to Mot. to Dismiss at 4), a plaintiff is not permitted to amend his complaint by virtue of what is said in a memorandum of law, *Uddoh v. United Healthcare*, 254 F. Supp. 3d 424, 429 (E.D.N.Y. 2017) ("A plaintiff, however, is not permitted to interpose new factual allegations or a new legal theory in opposing a motion to dismiss...." (citing *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) ) ). The complaint does not explicitly seek damages, and the Court cannot construe it otherwise.

**\*2** On September 25, 2017, the Defendants filed the instant motion to dismiss the complaint for lack of jurisdiction pursuant to Rule 12(b)(1), and for failure to state a claim pursuant to Rule 12(b)(6).

## II. DISCUSSION

### A. As to the Defendants' Motion to Dismiss Based on Sovereign Immunity

The Defendants have moved for dismissal based on sovereign immunity pursuant to Rule 12(b)(1).

As an initial matter, the Court first observes that within the Second Circuit, the question of whether a motion to dismiss made on sovereign immunity grounds should be reviewed under Rule 12(b)(1) or under Rule 12(b)(6) remains unresolved. *See Carver v. Nassau Cty. Interim Fin. Auth.*, 730 F.3d 150, 156 (2d Cir. 2013) ("[W]hether the claim of sovereign immunity constitutes a true issue of subject matter jurisdiction or is more appropriately viewed as an affirmative defense is an open question in the Supreme Court and the Second Circuit." (citing *Wisc. Dep't of Corr. v. Schacht*, 524 U.S. 381, 391, 118 S. Ct. 2047, 141 L.Ed. 2d 364 (1998) ) ); *see also Garcia v. Paylock*, 13-CV-2868 KAM, 2014 WL 298593, at \*2 n.3 (E.D.N.Y. Jan. 28, 2014) ("It is an open question in the Second Circuit whether the claims of sovereign immunity

should be viewed as raising a question of subject matter jurisdiction, and thus be evaluated under \*339 Rule 12(b)(1), or as an affirmative defense analyzed under Rule 12(b)(6).").

This "distinction is significant," because "while [a district court] must accept all factual allegations in a complaint as true when adjudicating a motion to dismiss under FED. R. CIV. P. 12(b)(6), ... in adjudicating a motion to dismiss for lack of subject-matter jurisdiction [pursuant to FED. R. CIV. P. 12(b)(1) ], a district court may resolve disputed factual issues by reference to evidence outside the pleadings, including affidavits." *State Employees Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 77 (2d Cir. 2007) (internal citations omitted). As such, in accordance with the approach taken by other district courts within this Circuit, the Court will apply the stricter standard set under Rule 12(b)(6) while analyzing Defendants' sovereign immunity arguments. *See Tiraco v. New York State Bd. of Elections*, 963 F. Supp. 2d 184, 191 n.6 (E.D.N.Y. 2013) (noting that "[t]his distinction [ ] does not alter the outcome" of the case because "the court [ ] considered only the pleadings and the relevant state and federal law and [drew] all inferences in Plaintiff's favor") (citations omitted); *McMillan v. N.Y. State Bd. of Elections*, No. 10-CV-2502 (JG)(VVP), 2010 WL 4065434, at \*3 (E.D.N.Y. Oct. 15, 2010) (looking "only to the pleadings and to state and federal law" to resolve questions regarding sovereign immunity).

### 1. The Rule 12(b)(6) Standard

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the Plaintiff. *See Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013); *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Bold Electric, Inc. v. City of New York*, 53 F.3d 465, 469 (2d Cir. 1995); *Reed v. Garden City Union Free School Dist.*, 987 F. Supp. 2d 260, 263 (E.D.N.Y. 2013).

**\*3** Under the now well-established *Twombly* standard, a complaint should be dismissed only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L.Ed. 2d 929 (2007). The Second Circuit has explained that, after *Twombly*, the Court's inquiry under Rule 12(b)(6) is guided by two principles:

First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss and [d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 664, 129 S. Ct. 1937, 1940, 173 L.Ed. 2d 868 (2009) ).

Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and ... determine whether they plausibly give rise to an entitlement of relief." *Iqbal*, 556 U.S. at 679.

**B. The Eleventh Amendment**

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." *Rowland*, 494 F.3d at 95 (quoting U.S. CONST. AMEND. XI). The Eleventh Amendment bars federal courts from exercising subject matter jurisdiction over claims against states absent their consent to such a suit or an express statutory waiver of immunity. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 90-100, 104 S. Ct. 900, 79 L.Ed. 2d 67 (1984); *see also Huminski v. Corsones*, 386 F.3d 116, 133 (2d Cir. 2004). Although the plaintiff generally bears the burden of proving subject matter jurisdiction, the entity claiming Eleventh Amendment immunity bears the burden to prove

such. *See Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 237 (2d Cir. 2006).

Section 1983 imposes liability for "conduct which 'subjects, or causes to be subjected' the complainant to a deprivation of a right secured by the Constitution and laws." *Rizzo v. Goode*, 423 U.S. 362, 370-71, 96 S. Ct. 598, 46 L.Ed. 2d 561 (1976) (quoting 42 U.S.C. § 1983). It is well-settled that states are not "persons" under section 1983 and, therefore, Eleventh Amendment immunity is not abrogated by that statute. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L.Ed. 2d 45 (1989).

**1. Claims Against State Administrative Agencies**

Regardless of the type of relief sought, the Eleventh Amendment bars this Court from assuming jurisdiction over plaintiffs' claims asserted against the State of New York and its agencies. When the state or one of its "arms" is the defendant, sovereign immunity bars federal courts from entertaining lawsuits against them "regardless of the nature of the relief sought." *Pennhurst*, 465 U.S. at 100.

**a. Application to the Plaintiff's Claims Against the NYSP**

**\*4** As the Eleventh Amendment bars all suits against administrative agencies of a state, the Plaintiff's claims against the NYSP cannot be sustained. Defendant New York State Police is a division in the executive department of New York—*see* section 210 of New York's Executive Law—and is therefore immune from all claims, both federal and state. Congress has not overridden states' sovereign immunity respecting constitutional claims brought under 42 U.S.C. § 1983. *Will*, 491 U.S. at 109. And it is well established that "New York State has not waived its sovereign immunity from Section 1983 claims." *Nolan v. Cuomo*, No. 11 CV 5827 (DRH)(AKT), 2013 WL 168674, at \*7 (E.D.N.Y. Jan. 16, 2013) (citing *Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 39-40 (2d Cir. 1977) ); *see also Mamot v. Bd. of Regents*, 367 Fed.Appx. 191, 192 (2d Cir. 2010) (summary order); *Dube v. State Univ. of New York*, 900 F.2d 587, 594-95 (2d Cir. 1990) (holding that the Eleventh Amendment precludes an action under Section 1983 against SUNY, an integral part of the State of New York). Therefore, the NYSP is entitled to sovereign immunity on the Plaintiff's claims.

Accordingly, the Defendants' motion to dismiss the Plaintiff's claims against the NYSP is granted.

### 2. Claims Against State Officials in Their Official Capacity

A suit for damages against a state official in his or her official capacity "is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state." *Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir. 1993); *see also Will,* 491 U.S. at 71; *Ford v. Reynolds,* 316 F.3d 351, 354 (2d Cir. 2003). However, "the applicability of the Eleventh Amendment bar [to suits against individuals in their official capacities] depends on the form of relief sought." *Lee v. Dep't of Children & Families,* 939 F.Supp.2d 160, 165-66 (D. Conn. 2013). Money damages cannot be recovered from state officers sued in their official capacities. *See e.g., Will,* 491 U.S. at 71 ("[A] suit against a state official in his or her official capacity is not a suit against an official but rather is a suit against the official's office."); *Edelman v. Jordan,* 415 U.S. 651, 663, 94 S. Ct. 1347, 39 L.Ed. 2d 662 (1974) ("[A] suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment."); *Goonewardena v. New York,* 475 F. Supp. 2d 310, 329 (S.D.N.Y. 2007) ("[S]overeign immunity also extends to bar claims for monetary damages brought against state officers sued under section 1983 in their official capacities.").

Similarly, "judgments against state officers declaring that they violated federal law in the past" are also not permitted. *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy,* 506 U.S. 139, 146, 113 S. Ct. 684, 121 L.Ed. 2d 605 (1993) (citing *Green v. Mansour,* 474 U.S. 64, 73, 106 S. Ct. 423, 88 L.Ed. 2d 371 (1985) ). However, prospective injunctive relief is available against individuals being sued in their official capacities in order to correct an ongoing violation of federal law. *See Edelman,* 415 U.S. at 663; *Ex Parte Young,* 209 U.S. 123, 28 S. Ct. 441, 52 L.Ed. 714 (1908). In this regard, through the doctrine of *Ex Parte Young,* a party may bring "a suit for injunctive [or declaratory] relief challenging the constitutionality of a state official's actions in enforcing state law." *CSX Transp., Inc. v. N.Y. State Office of Real Prop. Servs.,* 306 F.3d 87, 98 (2d Cir. 2002) (internal quotation marks and alteration omitted); *see also Arthur v. Nyquist,* 573 F.2d 134, 138 (2d Cir. 1978).

In order to determine whether the *Ex parte Young* exception allows the Plaintiff to bring suit against state officials, this Court must first determine whether the complaint alleges an ongoing violation of federal law and second, whether the Plaintiff seeks relief properly characterized as prospective. *See Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.,* 535 U.S. 635, 645, 122 S. Ct. 1753, 152 L.Ed. 2d 871 (2002). "[T]o successfully avoid the Eleventh Amendment bar, a plaintiff must prove that a defendant's violation of federal law is of an ongoing nature as opposed to a case 'in which federal law has been violated at one time or another over a period of time in the past.' " *Papasan v. Allain,* 478 U.S. 265, 277-78, 106 S. Ct. 2932, 92 L.Ed. 2d 209 (1986) (quotation omitted). The inquiry for determining whether an "ongoing violation" exists is, "does the enforcement of the law amount to a continuous violation of plaintiffs constitutional rights or a single act that continues to have negative consequences for plaintiffs." *New Jersey Educ. Ass'n v. New Jersey,* No. 11-5024, 2012 WL 715284, at *4 (D.N.J. Mar. 5, 2012).

**\*5** Furthermore, when a plaintiff seeks prospective relief against a state official in their official capacity where the plaintiff alleges that a particular statute is unconstitutional, "the state officer ... 'must have some connection with the enforcement of the act' " that includes "both a particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty." *Kelly v. New York State Civil Serv. Comm'n,* No. 14 CV 716 VB, 2015 WL 861744, at *3 (S.D.N.Y. Jan. 26, 2015) (quoting *Ex Parte Young,* 209 U.S. at 157), *aff'd sub nom. Kelly v. New York Civil Serv. Comm'n,* 632 Fed.Appx. 17 (2d Cir. 2016); *see also CSX Transp.,* 306 F.3d at 99 (amenability to suit under Eleventh Amendment requires "both the power and the duty" to take challenged action).

### a. Application to the Plaintiff's Claims Against Governor Cuomo in His Official Capacity

As stated above, the complaint does not explicitly seek damages. However, even if it did, the Plaintiff would be unable to seek that relief against Governor Cuomo in his official capacity. *Ying Jing Gan,* 996 F.2d at 529 ("To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state." (internal citations omitted) ).

As to his requests for declaratory and injunctive relief, the Court finds that the Plaintiff does not explicitly seek prospective relief. Instead, he seeks a declaration that the Defendants violated federal law in the past, and a return of his firearms. Courts have held that neither of these types of relief are prospective. *See Puerto Rico Aqueduct and Sewer*, 506 U.S. at 146 (stating that "judgments against state officers declaring that they violated federal law in the past" are not permitted under the *Ex Parte Young* doctrine); *Dotson v. Griesa*, 398 F.3d 156, 177 n.16 (2d Cir. 2005) (holding that Second Circuit precedent "preclude[s] a federal court from ordering affirmative action by either the state or federal government employees in their official capacities"); *Nat'l R.R. Passenger Corp. v. McDonald*, 978 F. Supp. 2d 215, 233 (S.D.N.Y. 2013) ("[C]ourts in this Circuit have [held] ... that the return of property taken by the state is barred by the Eleventh Amendment because that constitutes 'retrospective' relief." (collecting cases) ), *aff'd*, 779 F.3d 97 (2d Cir. 2015); *Dean v. Abrams*, No. 94 CIV. 3704 (LAK), 1995 WL 791966, at *2 n.5 (S.D.N.Y. Dec. 26, 1995) ("The only exception to the Eleventh Amendment's protection is for 'prospective injunctive relief,' but Dean's demand for ... the return of her property does not qualify for this exception." (collecting cases) ).

While the Plaintiff does ask for an order declaring that the Defendants must afford any future victims of such seizures a prompt and fair hearing, the Plaintiff has not plead sufficient facts to demonstrate that he has standing to request such relief. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185, 120 S. Ct. 693, 706, 145 L.Ed. 2d 610 (2000) ("[A] plaintiff must demonstrate standing separately for each form of relief sought.")

"In seeking prospective relief like an injunction, a plaintiff must show that he can reasonably expect to encounter the same injury again in the future—otherwise there is no remedial benefit that he can derive from such judicial decree." *MacIssac v. Town of Poughkeepsie*, 770 F. Supp. 2d 587, 593 (S.D.N.Y. 2011) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 S. Ct. 1660, 75 L.Ed. 2d 675 (1983) ). A plaintiff cannot seek injunctive relief merely for past injury. *O'Shea*, 414 U.S. at 495-96, 94 S. Ct. 669; *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998). Instead, "the injury alleged must be capable of being redressed through injunctive relief 'at that moment.' " *Robidoux v. Celani*, 987 F.2d 931, 938 (2d Cir. 1993)

(quoting *Cty. of Riverside v. McLaughlin*, 500 U.S. 44, 51, 111 S. Ct. 1661, 114 L.Ed. 2d 49 (1991) ).

**\*6** Here, the Plaintiff does not allege that his guns will again be seized in the future. Indeed, as stated above, the Plaintiff did not state why his guns were seized. He does not plead sufficient facts to demonstrate standing to seek an order forcing the state to afford any future victims of seizures a prompt and fair hearing because he has not alleged that he will be a victim of such a seizure in the future.

Therefore, the Plaintiff does not seek prospective relief for an ongoing violation of federal law, and cannot avail himself of the *Ex Parte Young* doctrine. Governor Cuomo therefore has sovereign immunity with regard to the Plaintiff's claims.

The Plaintiff contends that he should be permitted to proceed on his theory of supervisory liability until he is able, through discovery, to determine which subordinate officials should be added to the complaint. This argument is completely unavailing.

First, "[a] defendant's supervisory authority is insufficient in itself to demonstrate liability under § 1983." *LaMagna v. Brown*, 474 Fed.Appx. 788, 789 (2d Cir. 2012) (citing *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) ); *Richardson*, 347 F.3d at 435 ("[M]ere linkage in the prison chain of command is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim." (citations and internal quotation marks omitted) ). Instead, "to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) (collecting cases). As the Second Circuit has stated, a supervisory defendant's personal involvement can be shown by evidence that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a

policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [the plaintiff] by failing to act on information indicating that unconstitutional acts were occurring.

*Id.* at 139 (emphasis omitted) (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) ).

Accordingly, "supervisory liability may be imposed when an official has actual or constructive notice of unconstitutional practices and demonstrates 'gross negligence' or 'deliberate indifference' by failing to act." *Meriwether v. Coughlin*, 879 F.2d 1037, 1048 (2d Cir. 1989) (quoting *McCann v. Coughlin*, 698 F.2d 112, 125 (2d Cir. 1983) ). The Plaintiff does not allege that any of the above factual circumstances are present here.

Second, the Plaintiff does not even allege that the Governor supervises the NYSP. Indeed, the complaint does not contain any allegations that are specific to Governor Cuomo.

Furthermore, as to the Plaintiff's argument that he should be permitted to maintain suit against Governor Cuomo until he has been afforded an opportunity to identify subordinate officials who have personal liability, the Plaintiff does not meet that "exception" to the supervisory liability rule here. The case cited by the Plaintiff for this very proposition held "[p]ermitting plaintiffs to use discovery as a fishing expedition undermines the principle that only portions of a complaint which satisfy a plausibility standard, *i.e.,* more than possible and less than probable, should unlock the doors of discovery." *Dudek v. Nassau Cty. Sheriff's Dep't*, 991 F. Supp. 2d 402, 414 (E.D.N.Y. 2013) (internal citations and quotation marks omitted).

**\*7** The *Dudek* court relied on the fact that the complaint failed to contain a single factual allegation that any of the supervisory defendant's subordinates were personally involved in the action. Here too, the Plaintiff does not allege that Governor Cuomo supervises members of the NYSP, nor does he allege any specific acts by any individual John Doe officers of the NYSP. Nor would the Plaintiff be permitted to avail himself of the exception allowing discovery to go forward where a litigant raises colorable claims against supervisors because that exception only applies to *pro se* litigants. *See Davis v. Kelly*, 160 F.3d 917, 922 (2d Cir. 1998) ("We therefore hold that when a *pro se* plaintiff brings a colorable claim against supervisory personnel, and those supervisory personnel respond with a dispositive motion grounded in the plaintiff's failure to identify the individuals who were personally involved, under circumstances in which the plaintiff would not be expected to have that knowledge, dismissal should not occur without an opportunity for additional discovery."); *Soto v. Brooklyn Corr. Facility*, 80 F.3d 34, 34 (2d Cir. 1996) (holding that where a pro se litigant mistakenly failed to name the individual corrections officers who might be liable, the pro se plaintiff would be afforded opportunity to amend his complaint after discovery); *Satchell v. Dilworth*, 745 F.2d 781, 785 (2d Cir. 1984) (same).

Finally, the Plaintiff is also unable to bring claims against Governor Cuomo based on his allegation that the NY SAFE Act is unconstitutional. The Court notes again that the Plaintiff does not seek an order stating that the NY SAFE Act is unconstitutional. He instead alleges that it is unconstitutional, and seeks an order requiring the Defendants to afford victims of gun seizures fair hearings.

In any event, the Plaintiff has not alleged that the Governor has any duty to enforce the NY SAFE Act. Nor does N.Y. PENAL LAW § 400, the only specific statute cited by the Plaintiff, afford any duty or power to the Governor. To the extent that the Plaintiff relies on the fact that the NY SAFE Act was signed by Governor Cuomo, which the Court notes that he did not allege, "[t]he well-settled doctrine of absolute legislative immunity ... bars actions against legislators or governors ... on the basis of their roles in enacting or signing legislation." *Warden v. Pataki*, 35 F.Supp.2d 354, 358 (S.D.N.Y. 1999), *aff'd sub nom. Chan v. Pataki*, 201 F.3d 430 (2d Cir. 1999). Furthermore, "the vast majority of courts ... have held ... that a state official's duty to execute the laws is not enough by itself to make that official a proper party in a suit challenging a state statute." *Warden*, 35 F. Supp. 2d at 359.

2018 WL 1832929

Therefore, the Plaintiff has failed to allege that Governor Cuomo has the power or duty to take action regarding the NY SAFE Act, and the Governor has sovereign immunity over those claims.

Accordingly, the Defendants' motion to dismiss the Plaintiff's claims against Governor Cuomo is granted.

### III. CONCLUSION

For the reasons stated above, the Defendants' motion to dismiss the complaint based on sovereign immunity is granted in its entirety. The Clerk of the Court is respectfully directed to close the case.

It is **SO ORDERED.**

**All Citations**

Slip Copy, 2018 WL 1832929

---

**End of Document**                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.